IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01902-MSK

EDWARD LEE RYE,

        Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

        Defendant.

## ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

**THIS MATTER** comes before the Court on Plaintiff Edward Lee Rye's Brief **(#9)** in support of his appeal from the Commissioner of Social Security's (the "Commissioner's") final decision denying his application for disability insurance benefits and supplemental security insurance, Defendant's Response Brief **(#10)**, and Mr. Rye's reply brief **(#11)**.

**I.    Jurisdiction**

Mr. Rye applied for disability benefits in 2006. His application was denied and he sought and obtained a hearing before an administrative law judge ("ALJ"). The ALJ found that:

    1.    Mr. Rye met the insured status requirements of the Social Security Act through December 31, 2007.

    2.    He had not engaged in substantial gainful activity since June 7, 2004.

    3.    He had severe impairments in the form of post cervical/trapezius myofascial pain syndrome, thoracic and lumbar strain/sprain, lumbar facet syndrome, chronic obstructive pulmonary disease ("COPD"), and mild lumbar degenerative disc disease, but none of said impairments met or medically equaled the impairments listed in Appendix 1, Subpart P, Regulation Number 4 (the "Listings").

    4.      He had the residual functional capacity ("RFC") to perform light work, subject to the restriction that he could not be exposed to dust, fumes, or gasses.

    5.      He could perform his former work as a telemarketer and, therefore, was not disabled.

The Appeals Council denied Mr. Rye's request for review of the ALJ's decision, thereby making it the final administrative decision for the purposes of judicial review. Mr. Rye subsequently filed a timely complaint in this Court challenging the Commissioner's denial of benefits. Therefore, this Court properly exercises jurisdiction under 42 U.S.C. §405(g).

## II.   Material Facts

Mr. Rye lives in Michigan, where he cares for an elderly uncle. In the relevant past, Mr. Rye lived in Colorado and worked as a telemarketer, day laborer, and ice cream truck driver. He has the equivalent of a high school education. Mr. Rye alleges he became disabled on June 7, 2004 at the age of 49, due to injuries he sustained when an explosion threw him off of his feet and caused him to land in a twisted position, resulting in nerve damage and chronic neck and back pain. After he submitted his application for benefits, Mr. Rye was diagnosed with COPD and also injured his right hand, causing him occasional numbness and an intermittent inability to grab, all of which he alleges prevent him from working. He stated that on a typical day, he would make coffee and do light housework, make a sandwich for lunch and watch television, then take his medications and nap for a few hours. He explained that he had good days and bad days, and that on bad days, he would be totally incapacitated all day.

Mr. Rye stated that he could sit for no more than 10 or 15 minutes at a time before experiencing pain that would force him to stand, which, conversely, he could do for no more than 10 or 15 minutes before experiencing pain that would force him to sit. He testified that his

discomfort with sitting and standing would cause him to need many work breaks. He explained that he would also need daily breaks to nap, because his pain and medications made him drowsy. He estimated that he could lift between 5 and 8 pounds without experiencing intense pain and that he could walk approximately 1 city block before needing to use an inhaler.

### III.     Medical Evidence

Dr. Neil Schultz evaluated and treated Mr. Rye for a period of approximately 6 months after the June 2004 explosion. At the end of the period, Dr. Schultz noted his expectations that Mr. Rye would continue to experience back and neck pain indefinitely and that the pain would likely worsen with time. Dr. Schultz stated that Mr. Rye had achieved maximum medical improvement and opined that he: (1) could lift no more than 10 pounds occasionally; (2) could only infrequently bend, stoop, squat, push, or pull; and (3) would need to restrict himself to sedentary activities.

In January 2006, Dr. Stephen Morrison, a treating physician, opined that Mr. Rye could not fully bend, could not lift more than 10 pounds, and could not sit, stand, or walk for more than 5 minutes. In August 2006, Dr. Morrison stated that Mr. Rye could sit or stand for 30 minutes at a time for up to 4 hours a day, so long as he could take 5 to 10 minute breaks every hour and shift positions frequently and at will. He asserted that Mr. Rye could lift up to 20 pounds frequently and 50 pounds occasionally, twist frequently, and bend or crouch occasionally. Dr. Morrison surmised that Mr. Rye would need to be absent from work approximately 3 days per month.

In June 2006, Mr. Rye presented to consultative examiner Dr. Laura Moran, who found that he had some minor degenerative changes and a mildly decreased range of motion in his

spine. She found no evidence to support Mr. Rye's allegations that he could only stand or walk for 5 to 10 minutes and sit for 10 minutes at a time.[1] She opined that he could not bend or squat, but could lift and carry up to 20 pounds and could stand or walk all day, so long as he could sit for 5 or 10 minutes per hour.

In July 2006, Mr. Rye presented to pulmonologist Russell Bowler. Dr. Bowler diagnosed him with moderate COPD and borderline hypertension, prescribed lung and nasal medications, and instructed him to stop smoking.

A vocational expert ("VE") opined that a hypothetical person comparable to Mr. Rye in age, education, and experience with light work, who was subject to a strict limitation on exposure to dust, fumes, or gas would be able to perform Mr. Rye's former work as a telemarketer.[2] The VE opined that the same individual, subject to the limitations of needing to alternate between sitting and standing every half hour, needing a 10 minute break every hour, needing daily 2-hour naps, and needing to be absent 3 days per month would not be able to perform any work.

**IV.    Analysis**

    **A.    Standard of Review**

Judicial review of the Commissioner's determination that a claimant is not disabled within the meaning of the Social Security Act is limited. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495 (10th Cir. 1992). Section 405(g) of the Social Security Act

---

[1] Dr. Moran noted that Mr. Rye sat through the 30-minute examination without complaining of pain or exhibiting pain behaviors.

[2] The VE explained that the telemarketer job was SVP 3, sedentary, and semi-skilled, requiring frequent fingering and occasional reaching and handling.

establishes the scope of this Court's review of the Commissioner's denial of benefits.  *See* 42 U.S.C. § 1383(c)(3) (incorporating provisions of 42 U.S.C. § 405(g)).  This Court's review is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Id.*  It requires more than a scintilla of evidence but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F. Supp. 553 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Finally, this Court must meticulously examine the record, but it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.   Evaluation of Disability

The criteria to obtain disability insurance benefits under the Social Security Act are that a claimant meets the insured status requirements, is younger than 65 years of age, and is subject to a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequence for evaluating disability.  *See* 20 C.F.R. § 404.1520(b)-(f); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step

analysis). If the ALJ determines that a claimant is or is not disabled at any point in the sequence, the analysis ends. *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that limits his or her physical or mental ability to perform basic work activities. *Id*. § 404.1520©. Third, the claimant must compare his or her impairment to established Listings. If the impairment matches or is equivalent to the Listings, the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairment does not match or is not equivalent, the analysis proceeds to a fourth step. *Id.* § 404.1520(e).

At step four, the claimant bears the burden of proof to establish that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *see also* 20 C.F.R. § 404.1520(f). The step has three phases. In phase one, the ALJ must assess the claimant's physical and mental RFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). In phase two, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *Id.* (citations omitted). In phase three, the ALJ must determine whether the claimant can perform his or her past relevant work. *Id.* (citations omitted). If the claimant is able to perform the past relevant work, he or she is not disabled. If the claimant is not able to perform the past relevant work, the analysis proceeds to a fifth and final step.

At the fifth step, the burden of proof shifts, and the ALJ must demonstrate that based on the claimant's RFC, age, education, and work experience, the claimant can perform other work, and the work that the claimant can perform is available in significant numbers in the national

economy.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  The ALJ's burden at the fifth step is met if the decision is supported by substantial evidence.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### C.     Evaluation of Mr. Rye's Arguments

Mr. Rye argues that the ALJ made several errors at step four, including: (1) making a conclusory and incomplete RFC assessment; (2) failing to give adequate deference to Dr. Morrison's opinions in assessing Mr. Rye's RFC; and (3) failing to develop the record both concerning Mr. Rye's medical history in assessing his RFC and concerning the demands of Mr. Rye's past relevant work.  The Court need only address Mr. Rye's first argument.

In assessing Mr. Rye's RFC, the ALJ accorded treating physician Dr. Morrison's opinions little weight,[3] and it appears that the ALJ instead relied, in part, upon Dr. Moran's opinion.[4] In determining that Mr. Rye had the RFC to perform light work, the ALJ effectively adopted Dr. Moran's opinion that Mr. Rye could lift up to 20 pounds and walk and stand at length.[5]  However, the ALJ apparently rejected the portion of Dr. Moran's opinion that Mr. Rye would need to sit for 5 to 10 minutes every hour because the ALJ did not include such restriction

---

[3]The ALJ stated that Dr. Morrison's February 2006 opinion was not based on clinical findings and the August 2006 opinion was inconsistent with the minor symptoms Dr. Morrison noted.

[4]The ALJ did not expressly adopt Dr. Moran's opinion, but discussed it at length and with approval throughout his decision.

[5]As previously noted, the ALJ assessed Mr. Rye with the RFC to perform light work, subject to the restriction that he could not be exposed to dust, fumes, or gas.  "Light work" involves lifting no more than 20 pounds at a time and may require a significant amount of walking, standing, or sitting while pushing and pulling arm or leg controls.  20 C.F.R. §404.1567(b).

in the RFC. However, the ALJ failed to explain why he chose to reject the restriction.[6]

The ALJ's failure to explicate what opinion he gave deference to, why such deference was given, and why it was not constitutes error. Generally, an ALJ must articulate reasoning that is specific enough to allow a subsequent reviewer to ascertain the weight accorded to physicians' opinions and the reasons for that weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Soc. Sec. R. 96-8p requires that in making an RFC assessment, an ALJ must describe how the evidence supports each conclusion. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Pursuant to Soc. Sec. R. 96-8p, an ALJ must also discuss any conflicts between medical source opinions and the RFC assessment and explain why any opinions were not adopted. *See id*; *Sitsler v. Barnhart*, 182 Fed. App'x. 819, 823 (10th Cir. 2006). By failing to discuss Dr. Moran's sitting restriction and omitting it from the RFC, it appears that the ALJ impermissibly accepted certain aspects of Dr. Moran's opinion and rejected others without explanation. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215, 1219 (10th Cir. 2004). In this case, the ALJ failed to clearly state or explain his acceptance or rejection of the proffered physician opinions. A decision must be reversed if the Commissioner uses the wrong legal standard or fails to clearly demonstrate reliance on the correct standard. *Glass v. Shalala*, 43 F3d 1392 (10th Cir. 1994).

In addition, it might appear that the ALJ's error is harmless because Mr. Rye's former work as a telemarketer was sedentary and, generally, a claimant who is deemed capable of performing light work is deemed capable of performing sedentary work. However, this is only

---

[6]This omission is particularly conspicuous in light of the ALJ's statement that Dr. Moran's seating requirement was consistent with other medical opinions in the record.

true if the claimant is not subject to sitting restrictions.  20 C.F.R. §404.1567(b).  Sedentary work generally involves approximately 6 hours of sitting in an 8 hour day.  SSR 83-10, 1983 WL 31251, at *5 (Nov. 30, 1982). Dr. Moran did not address Mr. Rye's ability to sit.  Dr. Morrison limited Mr. Rye's ability to sit to 4 hours in a day, which would preclude sedentary work..Without a clear statement of which opinion the ALJ accepted and which he rejected, it is impossible for the Court to evaluate whether the conclusion that Mr. Rye could perform his prior work was supported by substantial evidence.

**V.     Conclusion**

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this Order.

Dated this 27th day of May, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge